UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DORISTEEN LESLIE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FIDELITY NATIONAL TITLE INSURANCE COMPANY,<br><br>Defendant. | CASE NO. C08-5252BHS<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS |

This matter comes before the Court on Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 22. Plaintiff filed a class action suit against Fidelity National Title Insurance Company ("Fidelity"), alleging that she was overcharged for a title insurance policy when she refinanced her home. A class action has not been certified.

The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part the motion for the reasons stated herein.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

In Washington, title insurance is defined as "insurance of owners of property or others having an interest in real property, against loss by encumbrance, or defective titles, or adverse claim to title, and associated services." RCW 48.11.100. No one is required by law to obtain title insurance, but a mortgage lender will typically require a borrower to

buy title insurance in order to protect the lender's interest in the property as security for the loan. *Wash. State Office of the Ins. Comm'r, Report of the Title Insurance Review Task Force, Title Insurance in Washington: Improving Competition and Consumer Choice,* 9 (Sept. 2007). A lender will also require a property owner to purchase a new title insurance policy when the owner refinances a mortgage. *Id.* A refinance title insurance policy provides the same coverage as the previous policy, and also protects the lender from any issues that may have arisen since the consumer originally purchased the property, such as liens or easements. *Wash. State Office of the Ins. Comm'r, Fact Sheet: Title Insurance*.

In contrast to life, health, and vehicle insurers, title insurers do not usually market their products directly to consumers. *Wash. State Office of the Ins. Comm'r, Report* at 12. Rather, they compete for referrals from "middlemen" like real estate agents, mortgage brokers, and loan officers. Consumers usually purchase title insurance in connection with a real estate transaction, and according to the Washington State Insurance Commissioner's ("Insurance Commissioner") task force, consumers "tend to rely on recommendations" of middlemen and will not often shop independently because "they do not want to disrupt or slow the [transaction] process." *Id.*

In April of 2004, Plaintiff obtained a mortgage loan on her home from Argent Mortgage Company, LLC in the principal amount of $133,600 ("the prior loan"). At closing of the prior loan, the lender required Plaintiff to purchase a lender's title policy in the amount of the note on her home.

On February 22, 2007, Plaintiff refinanced the prior loan by obtaining a new loan from Wells Fargo Bank, N.A. ("Wells Fargo") in the principal amount of $160,000. Plaintiff contends that she was "required to purchase a lender title policy" issued by Fidelity insuring Wells Fargo. Plaintiff was required to pay a premium in the amount of $1,251.20 for the lender title policy at closing.

According to its rate filings,[1] Fidelity provides discounted rates in two relevant circumstances: (1) a 50% lower rate for refinances, and (2) a 20% lower rate for new policies obtained within 5 years of a prior policy. Fidelity's rate filings provide in relevant part**:**

> **2.8 REFINANCE/JUNIOR MORTGAGE RATE**
> When a lender's policy has been issued at the general schedule rate and a new loan on the same property is executed by the same borrower(s) or has assumed the prior indebtedness to be refinanced, the charge for the new lender's policy shall be 50% of the general schedule rate for standard or extended coverage, which [sic] a minium charge of $200.00 on 1 to 4 multi-family residences.
>
> ***
>
> **2.2 SHORT TERM RATE**
> If an owner's, lender's or leasehold policy has been issued by any title insurer, and an order for title insurance is placed within five (5) years following the date of the prior policy, the charge will be eighty percent (80%) of the General Schedule Rate on 1 to 4 multi-family residences with a minimum charge of $200.00.

Dkt. 22 at 4.

Plaintiff contends that she did not receive the refinance rate (or alternatively, the short term rate) to which she was entitled. According to Plaintiff, "[b]ecause the lender's policy that Fidelity issued was insuring a new loan on the same property executed by the same borrower of the indebtedness to be refinanced, [Fidelity] was required to discount the premium charge for the lender's policy. Specifically, Plaintiff was entitled to a discount of 50% of Fidelity's 'general schedule rate.'" Dkt. 1 at 5. Instead, Plaintiff contends that Fidelity charged her the full premium.

On April 22, 2008, Plaintiff filed a class action complaint against Fidelity. Plaintiff alleges five causes of action. Count I alleges a violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86 *et seq*., based on Fidelity's failure to provide Plaintiff with the appropriate discount on her title insurance policy as described in

---

[1] Title insurers are required by state law to file their rates with the Insurance Commissioner. RCW 48.29.140(2). Title insurers' filed rate schedules often "include numerous discounts and surcharges based on the differences in the level of coverage provided, the type of transaction, and the category of the customer." *Wash. State Office of the Ins. Comm'r, Report* at 26.

ORDER - 3

Fidelity's filings with the Insurance Commissioner. Count II alleges a violation of WAC 284-30-800 and the CPA because Fidelity overcharged Plaintiff and distributed a portion of the excess amount to its title agents as an inducement, payment, or reward for obtaining the title insurance business for Fidelity. Count III alleges money-had-and-received because Fidelity holds the excess amount which Plaintiff paid. Count IV alleges unjust enrichment because Fidelity wrongfully secured a benefit from Plaintiff. Count V alleges breach of implied contract based on Fidelity's breach of an implied contractual term not to overcharge Plaintiff.

On June 5, 2008, Fidelity filed a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. 22. First, Fidelity contends that Counts I through IV, insofar as they are based on Fidelity's alleged failure to follow its filed rates, fail to state a claim because Fidelity is lawfully permitted to deviate from its filed rates. Second, Fidelity maintains that Counts I and II should be dismissed because a deviation from a filed rate does not rise to the level of an "unfair or deceptive act or practice" under the CPA. Third, Fidelity contends that Count II should be dismissed because Plaintiff's allegations do not constitute a violation of WAC 284-30-800. Fourth, Fidelity maintains that Counts III, IV, and V should be dismissed because Washington does not recognize private claims for alleged violations of state insurance statutes or regulations. Finally, Fidelity moves to dismiss Count V because Plaintiff cannot enforce an unwritten contract which seeks to vary the terms of the title policy and because she has failed to allege a meeting of the minds or mutual assent.

**II. DISCUSSION**

**A.    MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)**

Fed. R. Civ. P. 12(b)(6) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor.

*Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 1965. Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974.

**B.     REGULATION OF TITLE INSURANCE IN WASHINGTON**

The Washington Insurance Code, Title 48 of the Washington Revised Code, governs all insurance in Washington. The general insurance rate chapter, RCW 48.19, sets out a comprehensive scheme for setting insurance premiums.[2] Title insurers are specifically exempted from this statute; filing requirements for title insurers are governed by RCW 48.29.140. *See* RCW 48.19.010(1)(f). As will be discussed below, Washington substantially changed the Insurance Commissioner's authority to regulate title insurance in 2008, but these changes will not take effect until, at the earliest, 2010.

The current respective laws governing general insurance and title insurance share some similarities. For example, both prohibit insurers from setting rates that are "excessive, inadequate, or unfairly discriminatory." RCW 48.19.020 *and* 48.29.140(1). In addition, general insurers and title insurers both must file insurance rate schedules with the Insurance Commissioner, although the requirements for general insurers are more extensive. *Compare* RCW 48.19.040(1) (requiring general insurers to file "every classifications manual, manual of rules and rates, rating plan, rating schedule, minimum

---

[2] Although RCW 48.19.010 exempts other insurers in addition to title insurers, the Court will refer to those insurers covered under RCW 48.19 as "general insurers" for the sake of brevity.

ORDER - 5

rate, class rate, and rating rule") *with* RCW 48.29.140(2) (requiring title insurers to file "a schedule showing the premium rates to be charged by it").

In comparison to the general insurance chapter, however, under current law, "title insurance rates are subjected to a relatively superficial system of regulation." *Blaylock v. First American Title Ins. Co.*, 504 F. Supp. 2d 1091 at 1096 (W.D. Wash. 2007). Title insurers, unlike general insurers, are not required to file any information justifying their filed rates. *Compare* RCW 48.19.040(2) *and* WAC 284-24-065 *with* RCW 48.29.140. While the Insurance Commissioner may disapprove of changes in general insurance rates within 30 days of filing, RCW 48.19.060, he or she does not have similar authority to disapprove title insurance rates prior to those rates going into effect. RCW 48.29.140(2) (title insurance rates take effect 15 days after filing). The Insurance Commissioner is authorized, however, to prospectively "order the modification of any premium rate or schedule of premium rates found by him or her after a hearing to be excessive, inadequate, or unfairly discriminatory." RCW 48.29.140(3). Finally, general insurers are explicitly required to follow their filed rates: "[w]here a filing is required no [general] insurer shall make or issue an insurance contract or policy except in accordance with its filing then in effect." RCW 48.19.040(6). There is no provision in the current title insurance chapter that mirrors this general insurance requirement. Title insurers are required only to "file with the commissioner a schedule showing the premium rates *to be charged by it*." RCW 48.29.140(2) (emphasis added).

In 2008, Washington enacted substantial changes to the title insurance code. Many of these changes will subject title insurers to regulation similar to that imposed upon general insurers. Beginning "no earlier than January 1, 2010 . . . title insurers must file every manual of rules and rates, rating plan, rate schedule, minimum rate, class rate, and rating rule, and every modification of any of these filings, under RCW 48.29.143 and

RCW 48.29.147,[3] rather than under [the current law governing title insurance filings, RCW 48.29.140]." RCW 48.29.140(4). The statute that will govern title insurance filings, RCW 48.29.147, contains a provision that mirrors the general insurance requirement that prohibits a general insurer from issuing an insurance contract which deviates from its filings: "A title insurer or title insurance agent shall not make or issue a title insurance contract or policy, or use or collect any premium on or after a date set by the commissioner by rule, which date shall not be any earlier than January 1, 2010, except in accordance with rates and rules filed with the commissioner as required by [RCW 48.29.147]." RCW 48.29.147(10).

The new statute also contains other provisions similar to those found in the general insurance chapter. For example, title insurers will be required to file with the Insurance Commissioner sufficient information to permit the commissioner to ensure that the rates are not "excessive, inadequate, or discriminatory." *See* RCW 48.29.147(2); *compare* 48.29.143 (providing the same requirement for general insurers). To demonstrate that the rates are reasonable, title insurers will be required to demonstrate that a filed rate is an "actuarily sound estimate of the expected value of all future costs associated with an individual risk transfer." RCW 49.29.143(2); *compare* WAC 284-24-065(1) (providing the same requirement for general insurers). Unlike the current title insurance law, but similar to existing general insurance law, the new statute will require the Insurance Commissioner to review a title insurer's filing and will authorize the commissioner to disapprove the filed rate before the rate goes into effect. RCW 48.29.147(5) and (6); *compare* RCW 48.19.060(1) and (2)(a) (providing the same for general insurers).

C. **WASHINGTON CONSUMER PROTECTION ACT**

Plaintiff alleges that Fidelity violated the Consumer Protection Act ("CPA"), RCW 19.86 *et seq.*, and engaged in an unfair or deceptive practice, by failing to provide her with the appropriate discount on her title insurance policy. Dkt. 1 at 7.

---

[3] RCW 48.29.143 and RCW 48.29.147 were also enacted in 2008.

ORDER - 7

The Washington Insurance Code governs the regulation of insurance and does not itself provide protection or remedies for individual interests. *Pain Diagnostics and Rehabilitation Associates, P.S. v. Brockman*, 97 Wn. App. 691, 697 (1999). "Instead, private causes of action for violations of the insurance statutes and regulations must be brought under the CPA." *Id.*, 697-98. The CPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. To prove a violation of the CPA, the claimant must show: (1) an unfair or deceptive act; (2) the act occurred in the conduct of trade or commerce; (3) the act has an impact on the public interest; (4) injury to the claimant; and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 790 (1986).[4] The question of whether a particular action gives rise to a CPA violation is a question of law. *Seattle Pump Co., Inc. v. Traders and General Ins. Co.*, 93 Wn. App. 743, 752 (1999).

To prove an unfair or deceptive act under the first element of a CPA action, the plaintiff need not show that the act in question was intended to deceive, but only that the act had the capacity to deceive a substantial portion of the public. *Hangman Ridge*, 105 Wn. App. at 785. While the CPA does not define the term "deceptive," Washington courts have held that "implicit in that term is 'understanding that the actor *misrepresented* something of material importance.'" *Stephens v. Omni Ins. Co.*, 138 Wn. App. 151, 166 (2007) (*quoting Hiner v. Bridgestone/Firestone, Inc.*, 91 Wn. App. 722, 730 (1998)) (emphasis in original).

A plaintiff may satisfy the first element by proving either a per se or a non-per se deceptive or unfair trade practice. "A per se unfair trade practice exists when a statute which has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated." *Hangman Ridge*, 105 Wn.2d at 786. The Legislature and the Insurance Commissioner have identified specific acts that are per se unfair or deceptive. *See, e.g.,* RCW 48.30.010-.340 ("Unfair Practices and Frauds") *and*

---

[4] Fidelity challenges only the first element. Dkt. 22 at 12.

ORDER - 8

WAC 284-30-800 ("Unfair Practices Applicable to Title Insurers and Their Agents"). If a plaintiff cannot prove that an act is per se unfair or deceptive, he or she may still independently demonstrate that the practice is unfair or deceptive by showing that the practice has the capacity to deceive a substantial portion of the public. *Hangman Ridge*, 105 Wn.2d at 785.

Plaintiff alleges CPA violations based on (1) Fidelity's failure to follow its filed rates, in violation of RCW 48.29.140, (2) its bad faith practice of overcharging refinance borrowers for title insurance policies, in violation of RCW 48.01.030, and (3) its practice of sharing "illegal excess premium charges" with title agents, in violation of WAC 284-30-800.

In its motion to dismiss, Fidelity contends that Plaintiff has failed to allege a cognizable claim under the CPA. First, Fidelity maintains that because Washington law does not require title insurers to follow their filed rates, a failure to follow filed rates does not constitute a *per se* "unfair or deceptive practice" remediable under the CPA. In support of this argument, Fidelity maintains that Washington law does not identify a deviation from filed title insurance rates as an unfair or deceptive practice. Dkt. 22 at 13 (*citing* RCW 48.30, et seq. *and* WAC 284-30, et seq.). Second, Fidelity contends that Plaintiff has failed to identify a specific act or practice by Fidelity that could constitute a good faith violation under RCW 48.01.030. Third, Fidelity contends that Plaintiff has failed to plead a non-per se CPA claim because Plaintiff's claims arise solely from the fact that Fidelity charged a rate that deviated from its filed rate, and Plaintiff has not explained how this deviation is unfair or deceptive.

In her response, Plaintiff maintains that she has properly alleged conduct that could constitute either a per se or a non-per se CPA violation. Plaintiff alleges, "[w]ith respect to each title insurance policy issued, Fidelity knows or should know whether the discounted rates apply. Despite this, Fidelity engages in a routine practice of wrongfully

charging consumers such as Plaintiff more than the lawful rate for title insurance in connection with refinancing or replacement loan transactions."

### 1. Safe Harbor Provision under RCW 19.86.170

While insurers are not exempt from the CPA, the Act does create a safe harbor for actions "permitted" by state and federal regulatory bodies and officers. *Stephens*, 138 Wn. App. at 172 (*citing* RCW 19.86.170) (CPA does not apply to "transactions otherwise permitted, prohibited, or regulated under laws administered by the [Washington state] insurance commissioner"). An act is not considered "permitted" simply because it is not explicitly prohibited by insurance regulations. *Id.* In other words, insurers are shielded from a CPA action only when insurance laws and regulations "affirmatively authorize" the conduct at issue. *Blaylock*, 504 F. Supp. at 1104; *accord Miller v. U.S. Bank of Wash.*, 72 Wn. App. 416, 421 (1994) ("the exemption applies only if the particular practice found to be unfair or deceptive is specifically permitted, prohibited, or regulated").

The Court concludes that Plaintiff's claims, which are based on Fidelity's alleged misrepresentation of its discounted refinance rates in its filings and subsequent charging of the full premium, are not precluded by the "safe harbor" provision. Plaintiff's claims are not exempt under the CPA because the practice of charging a price for a title insurance policy in excess of a filed rate is not specifically "permitted, prohibited, or regulated" under the insurance code.

### 2. Title Insurance Rate Filings under RCW 48.29.140

Fidelity contends that title insurers are not precluded from deviating from their filed rates under current Washington law because, while the general insurance rate chapter requires general insurers to follow their filed rates, the title insurance chapter does not impose such a requirement. Fidelity maintains that the 2008 amendment to the title insurance chapter bolsters this argument, because the statute *will* specifically require title insurers to follow their filed rates beginning in 2010.

1    Plaintiff contends that title insurers are required to follow their filed rates because
2 the applicable statute requires title insurers to "file with the commissioner a schedule
3 showing the premium rates *to be charged by it*." Dkt. 36 at 10 (*citing* RCW 48.29.140(2))
4 (emphasis in Plaintiff's response). Plaintiff further contends that the second sentence of
5 this statute lends additional support to this interpretation: "[e]very addition to or
6 modification of such schedule [filed by the title insurer] or of any rate therein contained
7 shall likewise be filed with the commissioner, and no such addition or modification shall
8 be effective until expiration of fifteen days after such filing." *Id.*, 10-11. Plaintiff argues
9 that the second sentence requires a title insurer to first file a modified rate prior to
10 charging consumers a rate that deviates from its filed rate. Finally, Plaintiff contends that
11 the 2008 amendment discussed above does not change or add a new rule that, for the first
12 time, title insurers must abide by their filed rates. *Id.* at 13 (*citing* RCW 48.29.147(10)).
13 Rather, Plaintiff argues that this statute merely requires the Insurance Commissioner to
14 set a date no earlier than 2010 by which title insurers must comply with the
15 comprehensive new set of rules set out in RCW 48.29.147. In short, Plaintiff argues that
16 "[i]t is absurd to think that [prior to the legislation enacted in 2008], a title insurer had to
17 file rates 'to be charged by it'. . . but was not required to actually charge those rates." *Id.*,
18 13-14.

    The Court concludes that RCW 48.29.140 does not preclude a title insurer from
deviating from its filed rates. Plaintiff's questioning of the logic of requiring a title insurer
to file rates "to be charged by it" while not prohibiting the title insurer from then charging
a different rate addresses a policy decision that is not for the Court to decide. *See United
Parcel Service, Inc. v. State, Dep't of Revenue*, 102 Wn.2d 355, 363 (1984) (the court
should decide what the Legislature intended and not evaluate the wisdom of a policy).

    The Washington insurance code clearly sets different requirements for title
insurers than for other insurers. While the general insurance code explicitly prohibits
general insurers from deviating from their filed rates, the title insurance code does not.

Had the Legislature intended the current statute to prohibit a title insurer from deviating from its filed rates, the Court presumes that it would have included an identical provision to that found in the general insurance chapter. The Court also presumes that the Legislature would not have explicitly delayed the implementation of the newly enacted provision that *will* require title insurers to follow their filed rates beginning no earlier than 2010. *See Millay v. Cam*, 135 Wn.2d 193, 202 (1998) ("[I]t is well settled that where the Legislature uses certain language in one instance but different dissimilar language in another, a difference in legislative intent is presumed").

Accordingly, Plaintiff's claim alleging a per se violation of the CPA based solely on Fidelity's alleged failure to follow its filed rates fails.

**3.  Good Faith under RCW 48.01.030**

"The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters." RCW 48.01.030, *see also Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 386 (1986) ("an insurer must deal fairly with an insured, giving equal consideration *in all matters* to the insured's interests") (emphasis in original). RCW 48.01.030 places an enhanced fiduciary duty upon insurers. *Barstad v. Stewart Title Guar. Co., Inc.*, 145 Wn.2d 528, 543 (2002). The failure of an insurer to act in good faith is the basis for an action in tort. *See Overton v. Consolidated Ins. Co.*, 145 Wn.2d 417, 433 (2002). An insured may bring an action against his or her insurer for breach of the duty of good faith under the CPA. *Pain Diagnostics and Rehabiliation Associates, P.S.*, 97 Wn. App. 691 at 700. Claims of bad faith are not easy to establish and an insured bringing such a claim has a heavy burden to meet. *Id.; see also, e.g., Overton*, 145 Wn.2d at 433 (an insurer alleging bad faith arising from a breach of contract must show that the breach was "unreasonable, frivolous, or unfounded"). However, the insurer's duty to act in good faith is "fairly broad" and may be breached by conduct short of intentional bad

faith or fraud, but not by a good faith mistake. *Anderson v. State Farm Mut. Ins. Co.*, 101 Wn. App. 323, 329 (2000).

Typically, bad faith insurance claims involve an insurer's denial of claim coverage or unreasonable processing of a claim. *See Barstad*, 145 Wn.2d at 543. Other actions for breach of duty of an insurer's duty of good faith have included claims for wrongful refusal to defend, failure to settle a lawsuit within policy limits, and breach of duty of good faith in the conduct of a reservation-of-rights defense. *See Tank*, 105 Wn.2d at 387 (collecting cases). Plaintiff did not cite to case law that supports her contention that an insurer may breach its duty of good faith by knowingly overcharging a consumer in contravention of its filed rates, nor did the Court find a case that involved allegations of bad faith during the formation phase of an insurance contract.[5]

Although Plaintiff failed to cite case law that supports her claim, the Court concludes that Plaintiff has pled a cognizable claim for breach of the duty of good faith. First, the statutorily imposed duty of good faith applies to *all* insurance matters. RCW 48.01.030; *see also* RCW 48.01.020 (scope of insurance code applies to all insurance transactions). Thus, the duty of good faith applies to the formation phase of an insurance contract.

Second, while a mere deviation from filed rates does not constitute a per se violation of the CPA, Plaintiff here has alleged that Fidelity's deviation from its filed rate was conducted in bad faith. A reading of RCW 49.29.140 indicates that the Legislature clearly intended the Insurance Commissioner to review title insurance rates to insure that the rates are reasonable. The statute governing title insurers, like the statute governing general insurers, provides that "[p]remium rates for the insuring or guaranteeing of titles

---

[5] Plaintiff cited *St. Paul Fire and Marine Ins. Co. v. Updegrave*, 33 Wn. App. 653, 659 (1983), Dkt. 36 at 19, for the proposition that overcharging a premium is a recoverable per se violation of the CPA. This case is distinguishable from Plaintiff's allegations because *St. Paul Fire* involved allegations of overcharging an insured in breach of an *existing* insurance contract which prohibited certain premium increases.

ORDER - 13

shall not be excessive, inadequate, or unfairly discriminatory." RCW 49.29.140(1). Title insurers are required to file their premium rates, as well as any modifications to these rates. RCW 49.29.140(2). After rates have been filed, the Insurance Commissioner may order the modification of any premium rate found by the commissioner to be excessive, inadequate, or unfairly discriminatory after a hearing. RCW 49.29.140(3). While title insurers are not explicitly prohibited from deviating from filed rates, the Legislature must have intended title insurers to file their rates in good faith. Otherwise, a title insurer could intentionally file a false rate with the Insurance Commissioner in order to avoid the oversight that was intended to protect consumers from excessive rates. Therefore, while Fidelity correctly argues that current law does not explicitly prohibit a title insurer from deviating from its filed rates, the Court concludes that current law also does not permit title insurers to file a false rate, as alleged here, and subsequently charge consumers 20 to 50% more than the filed rate, if a fact-finder determines that these actions were taken in bad faith.[6]

Accordingly, Plaintiff's claim for violation of the CPA based on her allegation that Fidelity breached its duty of good faith may proceed.

### 4. Title Insurer Inducements under WAC 284-30-800

In Washington, it is unlawful "for a title insurer or its agent, directly or indirectly, to offer, promise, allow, give, set off, or pay anything of value exceeding twenty-five dollars, calculated in the aggregate over a twelve-month period on a per-person basis . . . to any person as an inducement, payment, or reward for placing or causing title insurance business to be given to the title insurer." WAC 284-30-800(2). This section does not

---

[6] Fidelity also suggests that Plaintiff's bad faith claim should be dismissed because she failed to include this claim in her complaint. *See* Dkt. 38 at 10. Plaintiff sufficiently put Fidelity on notice of this legal theory by pleading a violation of the CPA based on Fidelity's alleged failure to follow its filed rates. *See American Timber and Trading Co. v. First Nat. Bank of Or.*, 690 F.2d 781, 786 (9th Cir. 1982) ("A party need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case.").

ORDER - 14

apply to "the relationship of a title insurer and its agent with insureds." WAC 284-30-800(4).

Plaintiff contends that Fidelity violated WAC 284-30-800 by giving a portion of the additional amounts charged to its title agents as "an inducement, payment, or reward for placing or causing title insurance business to be given to [Fidelity]." Dkt. 36 at 19. In her response, Plaintiff contends that the exemption for agents in WAC 284-30-800(4) does not apply because Fidelity's title agents were not engaged in "legitimate practices," but instead were knowingly overcharging for title insurance policies and keeping a portion of the excess profit.

This claim must fail. WAC 284-30-800 prohibits inducements paid to third parties such as real estate agents, lawyers, financial institutions, and mortgage brokers; it specifically exempts inducements paid to a title insurer's own agents. *Compare* WAC 284-30-800(3) and (4).

**D.    COMMON LAW CLAIMS**

Plaintiff's third, fourth, and fifth causes of action allege money-had-and-received, unjust enrichment, and breach of implied contract. The first two common law claims are based on Plaintiff's allegation that Fidelity failed to provide her with the "mandatory" discounted finance rate. Dkt. 1, 9-11. The third common law claim, breach of implied contract, alleges that she and Fidelity entered into an implied contract that "included an implied term that [Fidelity] would charge a lawful premium and [provide her with] the mandatory refinance credit." *Id*. at 11.

Fidelity moves to dismiss these claims because the claims, "when stripped of their labels[,] are simply private claims to enforce an insurance statute," and are therefore precluded under Washington law. Dkt. 22, 17-18.

Fidelity is correct that private causes of action for violations of the insurance statutes must be brought under the CPA. *Pain Diagnostics, supra* at 9; *accord Escalante v. Sentry Ins.*, 49 Wn. App. 375, 388 (1987), *review denied*, 109 Wn.2d 105 (1988), (there

is no clearly expressed intent in RCW 48.30.010 or the WAC creating private causes of action for isolated violations of the insurance provisions, but the CPA does create a private cause of action for such claims).

Plaintiff contends that *Pain Diagnostics, Escalante*, and an unpublished opinion cited by Fidelity, *Bailey v. State Farm Auto Mut. Auto. Ins. Co.*, 1998 WL 386273 (1998), are inapposite because these cases involved the handling of insurance claims, whereas Plaintiff's claims are "non-statutory, common law claims" which seek to recover the "excessive premiums that Fidelity collected." Dkt. 36, 20-22. However, Plaintiff's allegations are based on her contention that RCW 48.29.140 prohibited Fidelity from deviating from its filed rates, or alternatively, that Fidelity violated the CPA by charging her the full premium.[7] Plaintiff's common law claims based on an alleged violation of RCW 48.29.140 must fail because Washington case law requires allegations of violations of the insurance code to be brought under the CPA. In any event, these claims fail because the Court has concluded that RCW 48.29.140 does not explicitly require title insurers to follow their filed rates.

In addition, Plaintiff's common law claims based on Fidelity's alleged breach of the duty of good faith, RCW 48.01.030, also fail because, again, claims alleging violations of the insurance code must be brought under the CPA.

---

[7] Plaintiff cites *Randelman v. Fidelity National Ins. Co.*, 465 F. Supp. 2d 812 (N.D. Oh. 2006), in support of her contention that she has alleged valid common law claims based on Fidelity's failure to follow it filed rates. But Ohio's title insurance code, in contrast to RCW 48.29.140, *did* require title insurers to provide discounts to refinancing borrowers. The plaintiff's breach of implied contract claim in *Randelman* was based on the defendant's alleged failure to comply with the mandated rates in Ohio's title insurance rate schedule. *Randelman*, 465 F. Supp. 2d at 819. The Court is also not persuaded by the other case Plaintiff cites in support of her breach of implied contract claim, *Jepson v. Ticor Title Ins. Co.*, 2007 WL 2060856 (W.D. Wash. 2007) (unpublished opinion). While *Jepson* did allow the plaintiff's breach of implied contract to proceed, that court did not address the issue of whether RCW 48.29.140 prohibited title insurers from deviating from filed rates. *Jepson* also did not appear to address any CPA issues. The Court also notes that *Jepson* was ultimately dismissed for lack of subject matter jurisdiction.

ORDER - 16

# III. ORDER

Therefore, it is hereby

**ORDERED** that Fidelity's motion to dismiss (Dkt. 22) is **GRANTED** in part and **DENIED** in part, as follows:

1. Fidelity's motion to dismiss Plaintiff's claims for violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86, *et seq.*, based on violations of RCW 48.29.140 and WAC 284-30-800, and Plaintiff's common law claims for money-had-and-received, unjust enrichment, and breach of implied contract are **DISMISSED WITH PREJUDICE**; and

2. Fidelity's motion to dismiss Plaintiff's claim for violation of the CPA based on a violation of the duty of good faith, RCW 48.01.030, is **DENIED**, and that claim may proceed.

Dated this 21st day of November, 2008.

BENJAMIN H. SETTLE
United States District Judge