UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DORISTEEN LESLIE, individually and
on behalf of all others similarly situated,

Plaintiff,

v.

FIDELITY NATIONAL TITLE
INSURANCE COMPANY,

Defendant.

CASE NO. C08-5252BHS

ORDER GRANTING IN PART
AND DENYING IN PART
PLAINTIFF'S MOTION FOR
RECONSIDERATION AND
DENYING DEFENDANT'S
MOTION FOR
RECONSIDERATION

This matter comes before the Court on the parties' motions for reconsideration. Dkts. 48 and 50. The Court grants in part and denies in part Plaintiff's motion for reconsideration, and denies Defendant's motion for reconsideration for the reasons stated herein.

## I. BACKGROUND

On November 21, 2008, the Court issued an order ("Order") granting in part and denying in part Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. 47. The Court dismissed Plaintiff's Consumer Protection Act ("CPA") per-se claims based on alleged violations of RCW 48.29.140 and WAC 284-30-800, as well as her common law claims for money-had-and-received, unjust enrichment, and breach of implied contract. *Id.* at 17. The Court allowed Plaintiff's CPA claim for violation of the duty of good faith ("bad faith claim"), pursuant to RCW 48.01.30, to proceed. *Id.* The Court did not squarely address the issue of whether Plaintiff's claim for non-per-se

violation of the CPA survived Defendant's motion to dismiss. *See* Dkt. 36, 14-17 (Plaintiff's response to Defendant's motion for summary judgment) (alleging non-per-se violation of the CPA).

On December 8, 2008, Plaintiff filed a motion for reconsideration. Dkt. 48. Plaintiff moves the Court to reconsider the dismissal of her CPA claim based on a per-se violation of RCW 48.29.140 as well as the dismissal of her common law claims. Plaintiff maintains that the Court erred by concluding that RCW 48.29.140 does not prohibit a title insurer from deviating from filed rates. Plaintiff alternatively requests the Court to certify the issue of whether a title insurer may deviate from its filed rates for review pursuant to 28 U.S.C. § 1292(b). *Id*. at 9.

On December 8, 2008, Defendant filed a motion to amend the Order, which the Court deemed a motion for reconsideration. Dkt. 50. Defendant moves the Court to amend the Order to dismiss Plaintiff's bad faith claim. Defendant maintains that Plaintiff's bad faith claim fails because, in Washington, only an insured may bring such a claim.

On January 7, 2009, the Court requested additional briefing from the parties regarding the motions for reconsideration. Dkt. 51. In addition to the issues raised in the motions for reconsideration, the Court requested briefing from the parties as to whether Plaintiff's non-per se CPA claim should proceed, as well as whether any issues should be certified to the Washington Supreme Court.

On December 31, 2008, the Washington State Insurance Commissioner filed an amicus brief. Dkt. 55, *see also* Dkt. 65 (granting leave to file amicus brief). The Insurance Commissioner maintains that the insurance code prohibits a title insurer from deviating from filed rates.

## II. DISCUSSION

Motions for reconsideration are governed by Local Rule CR 7(h), which provides as follows:

Motions for reconsideration are disfavored. The court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence.

Local Rule CR 7(h)(1).

Plaintiff and the Insurance Commissioner contend that the Court erred in concluding that the insurance code does not require a title insurer to charge only its filed rates. In addressing Plaintiff's bad faith claim, the Court recognized that current law does not *permit* a title insurer to deviate from its filed rates:

> [W]hile a mere deviation from filed rates does not constitute a per se violation of the CPA, Plaintiff here has alleged that Fidelity's deviation from its filed rate was conducted in bad faith. A reading of RCW 49.29.140 indicates that the Legislature clearly intended the Insurance Commissioner to review title insurance rates to insure that the rates are reasonable. The statute governing title insurers, like the statute governing general insurers, provides that "[p]remium rates for the insuring or guaranteeing of titles shall not be excessive, inadequate, or unfairly discriminatory." RCW 49.29.140(1). Title insurers are required to file their premium rates, as well as any modifications to these rates. RCW 49.29.140(2). After rates have been filed, the Insurance Commissioner may order the modification of any premium rate found by the commissioner to be excessive, inadequate, or unfairly discriminatory after a hearing. RCW 49.29.140(3). While title insurers are not explicitly prohibited from deviating from filed rates, the Legislature must have intended title insurers to file their rates in good faith. Otherwise, a title insurer could intentionally file a false rate with the Insurance Commissioner in order to avoid the oversight that was intended to protect consumers from excessive rates. Therefore, **while Fidelity correctly argues that current law does not explicitly prohibit a title insurer from deviating from its filed rates, the Court concludes that current law also does not permit title insurers to file a false rate**, as alleged here, and subsequently charge consumers 20 to 50% more than the filed rate, if a fact-finder determines that these actions were taken in bad faith.

Dkt. 47, 13-14 (emphasis added).[1]

---

[1] This analysis also rejects Fidelity's argument that the filing of rates is merely "informational" for the public's use and that the insurance code does not contemplate any policing of deviations from filed rates. As the Insurance Commissioner argues: "if insurers are not charging the rates that they have filed with the [Insurance Commissioner], the *inaccurate* filings cannot provide 'accurate, unbiased' information to consumers." Dkt. 67 at 3 (emphasis in original). Fidelity's argument that it was "permitted to use rates unless and until they were deemed to be unfair, discriminatory or excessive" is also unavailing. The title insurance code authorizes the Insurance Commissioner to modify excessive, inadequate, or unfairly

However, while the Order stated that the insurance code does not explicitly permit a title insurer to deviate from its filed rates, the Court erred in concluding that the title insurance code does not prohibit a title insurer from deviating from filed rates. *See id*. at 12. Upon reconsideration, the Court concludes that while the title insurance code does not contain language affirmatively prohibiting a title insurer from deviating from its filed rates, the code does prohibit a title insurer from deviating from filed rates.[2]

The statutory scheme of the insurance code supports this conclusion. First, as Plaintiff argued in her response to Fidelity's motion to dismiss, the insurance code requires a title insurer to file rates "to be charged by it." RCW 48.29.140(2). Thus, despite the difference in language used in the general insurance chapter, RCW 48.19, a title insurer who deviates from filed rates is not in compliance with the statute. Second, and perhaps more importantly, the title insurance code requires a title insurer to file modifications of any rates, and modified rates are not effective until fifteen days after filing. *Id*. The Court agrees with the Insurance Commissioner's interpretation of both provisions: "[i]t is clear from the plain language of the statute that the rates initially to be used by the insurer must be filed, and that any addition or modification to those rates must also be filed or they can never be effective." Dkt. 55 at 7; *see also* Dkt. 69 at 7 (Plaintiff's reply brief). In other words, a title insurer may not deviate from its filed rates until fifteen days after filing a modified rate, because such a rate would not be effective under the title insurance code. The Court erred in previously rejecting this argument.

_____

discriminatory rates *based on filed rates*. *See* RCW 48.29.140(3). Quite plainly, the Insurance Commissioner's ability to evaluate a rate to determine whether it is unfair, discriminatory, or excessive, would be hindered if title insurers were permitted to file inaccurate rate schedules. The Court also notes that while Plaintiff has not shown that judicial estoppel applies to Fidelity's argument in a separate case that RCW 48.29.140 *does* require a title insurer to charge only its filed rates, Fidelity's prior arguments are nonetheless illustrative of why its current arguments are implausible.

[2] To hold that a statute does not "affirmatively prohibit" an act, but does "prohibit" an act may seem superfluous, but here it is pertinent to the issue of whether Plaintiff has pled a cognizable per se claim under the CPA. *See* Section II(A), *infra*.

**A.      Plaintiff's Per Se CPA Claim (based on violation of RCW 48.29.140)**

The Court set out the legal standards for CPA claims in the Order. *See* Dkt. 17, 7-9.

The Court did not err in dismissing Plaintiff's per se CPA claim based on an alleged violation of RCW 48.29.140. While RCW 48.29.140 requires a title insurer to follow its filed rates, Plaintiff has not directed the Court to any language in RCW 48.29.140, or any other statute or regulation, that provides that a violation of RCW 48.29.140 gives rise to a per se CPA violation claim. *See* Dkt. 47 at 8 (per se unfair trade practice exists when statute declares an act to constitute an unfair or deceptive practice) (*citing Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 786 (1986)). As argued in Fidelity's initial motion to dismiss, Washington law does not identify a deviation from filed rates as an unfair or deceptive practice. *Id.* at 9 (*citing* Fidelity's motion to dismiss).

While the insurance code states that the business of insurance is "one affected by the public interest," RCW 48.01.030, the Order properly concluded that the fact that a title insurer deviates from filed rates does not give rise to a per se claim under the CPA unless a plaintiff can establish that the insurer acted in bad faith. The Court based this conclusion on the fact that the title insurance code does not currently contain language that affirmatively prohibits such deviations similar to the provision found in the general insurance chapter. *Compare* RCW 48.29.140 *with* RCW 48.19.040(6). At a minimum, had the Legislature intended a deviation from filed rates to constitute a per se violation of the CPA, it would have included affirmative language prohibiting the deviation from filed rates. Indeed, newly enacted title insurance legislation does include such language, effective no earlier than 2010. RCW 48.29.140.

**B.      Plaintiff's Per Se CPA Claim (based on RCW 48.01.030)**

Fidelity maintains that Plaintiff's bad faith claim fails because only an insured may bring such a claim. Fidelity cites several cases in support of this argument. *See* Dkt. 50, 3-

5 (collecting cases). Plaintiff distinguishes the cases cited by Fidelity, arguing that none of the cases involve a bad faith claim brought by a purchaser of a title insurance policy. Rather, Plaintiff argues, "the cases generally involve claims of bad faith in refusing to pay an insured's first-party claim or the handling of a third-party liability claim." In its reply, Fidelity argues that the Washington Supreme Court held that a purchaser of a title insurance policy could not bring a bad faith claim under the CPA. Dkt. 71 (citing *Transamerica Title Ins. Co. v. Johnson*, 103 Wn.2d 409 (1985)).

In *Transamerica*, the Washington Supreme Court rejected a title insurance purchaser's bad faith CPA claim because "a cause of action for a per se violation of the CPA may be brought only by the insured," and the purchaser was not the insured under the policy. *Transamerica*, 103 Wn.2d at 418. The purchaser claimed that the title insurance company owed him a duty to search and disclose assessments on the property. The *Transamerica* court held that the title insurance company did not owe the purchaser a duty to search and disclose assessments on the property, finding that the plaintiff had not relied on the company to do so. *Id.* at 415.

More recently, the Washington State Supreme Court cited *Transamerica* when it stated "only an insured may bring a per se action" under the CPA. *Tank v. State Farm Fire & Ins. Cas. Co.*, 105 Wn.2d 381, 394 (1986).[3] However, the *Tank* court acknowledged an exception to this rule. The *Tank* court distinguished a state court of appeals decision which held that a widow, who was not the insured under a life insurance policy, could bring a CPA action against the insurer. *Id.* (*citing Gould v. Mutual Life Ins. Co.*, 37 Wn. App. 756 (1984)).[4] In contrast to the third-party claimant plaintiffs in *Tank*,

---

[3] *Tank* involved the issue of whether a third party-claimant who was injured by the insured may bring a cause of action against the insurer.

[4] Some courts have held that *Gould* has been reversed on other grounds. *See, e.g., Manteufel v. Safeco Ins. Co. of America,* 116 Wn. App. 1047 (2003).

the state Supreme Court recognized that the plaintiff in *Gould* was owed a direct contractual obligation as a beneficiary under the insurance contract. *Id.*

Thus, under some circumstances, a plaintiff who is not the insured may bring a bad faith CPA claim against an insurer. In this case, Plaintiff has alleged that she is owed a contractual obligation because she purchased the title insurance policy when she refinanced her loan. Plaintiff alleges that Fidelity acted in bad faith by not providing her with the rate Fidelity represented in its filings. This raises a different issue than the issue raised in *Transamerica*, where the plaintiff maintained that the title insurer owed the purchaser of the policy a duty to search and disclose assessments on the property after the plaintiff purchased the policy.

This action is only at the pleading stage, and further development of the record may be required to determine whether Plaintiff and Fidelity share a contractual relationship, and whether such a relationship is of the type that may provide Plaintiff standing to bring a bad faith CPA claim. Accordingly, the Court concludes that it did not commit manifest error in allowing this claim to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss.

## C.    Plaintiff's non-Per Se CPA Claim

The Order did not address Plaintiff's non-per se CPA claim. The Court concludes that Plaintiff has pled a cognizable claim for a non-per se CPA claim based on Fidelity's alleged misrepresentation of its rates. Fidelity's contention that Plaintiff was not deceived because Fidelity disclosed the price to her prior to her refinance raises a factual issue that is not determinative of the issue of whether Plaintiff has pled a cognizable claim. In addition, Fidelity's contention that Plaintiff fails to state a claim because she failed to allege reliance is unavailing. Plaintiff satisfied notice-pleading standards; in any event, even if reliance were an element of a CPA claim, Fidelity's motion to dismiss challenged only the issue of whether the allegations rise to the level of "unfair or deceptive act or practice." Dkt. 22 at 12 (Fidelity's motion to dismiss); *see also Indoor*

*Billboard/Washington v. Integra Telecom of Washington, Inc.*, 162 Wn.2d 59, 83 (2007) (proximate cause in a CPA claim is a factual question). Plaintiff also correctly characterizes Fidelity's other arguments as raising factual issues, including its claim that it performed in good faith and that it did not act in a manner that had a capacity to deceive. With regard to Fidelity's contention that its actions fall within the safe-harbor provision of the CPA, RCW 19.86.170, the Court has concluded that title insurers are not "permitted" to deviate from filed rates. *See also* Dkt. 47 at 10.

**D.     Plaintiff's Common Law Claims**

The Court previously dismissed Plaintiff's common law claims for unjust enrichment, money-had-and-received, and breach of implied contract. The Court based these dismissals on *Pain Diagnostics and Rehab. Associates, P.S. v. Brockmon*, 97 Wn. App. 691 (1999), where the Washington Court of Appeals (Division II) held that private causes of action for violations of the insurance statutes and regulations must be brought under the CPA. Dkt. 47, 15-16. The Court reasoned that dismissal was warranted because Plaintiff's common law claims were all based on an alleged violation of RCW 48.29.140.

Plaintiff contends that dismissal of these claims was improper based in part on a recent Washington Supreme Court holding in *Potter v. Wash. State Patrol*, 2008 Wash. Lexis 1059 (Nov. 26, 2008). In *Potter*, the court held that a common law cause of action is not abrogated by a statutory cause of action unless there is an "explicit statement or clear evidence of the legislature's intent to abrogate the common law." Plaintiff argues that her common law claims should proceed because "there is no indication that the legislature intended the CPA to supplant all common-law causes of action in the insurance context." Dkt. 54 at 10. Fidelity maintains that Plaintiff fails to state proper common law claims not because the claims are abrogated by the CPA, but rather because the CPA or the insurance statutes "form the basis" for her common law claims. Dkt. 71 at 6. Fidelity contends that this Court correctly concluded that Plaintiff's claims must be

brought under the CPA because the claims are based on an alleged violation of the title insurance code. *Id*. (citing Order at 16).

To prevail on a claim for unjust enrichment, a plaintiff must establish that (1) a benefit was conferred on another party, (2) with that party's knowledge, and (3) the retaining of the benefit by the party is inequitable. *Dragt v. Dragt/DeTray LLC*, 139 Wn. App. 560, 576 (2007). To prevail on a claim for money-had-and-received, a plaintiff "must show that the money was received in such circumstances that the possessor will give offense to equity and good conscience if permitted to retain it." *Ehsani v. McCulough Family P'ship*, 160 Wn.2d 586, 592 (2007).

To prevail on a breach of implied contract claim, a plaintiff must demonstrate that implied contract exists based on the acts of the parties involved and in light of the surrounding circumstances. *Caughlan v. Int'l Longshoreman's and Warehouseman's Union*, 52 Wn.2d 656, 660 (1958). An implied contract requires mutual assent of the parties, but a trial court may "deduce mutual assent from the circumstances, whereby the court infers a contract based on a course of dealings between the parties or a common understanding within a particular commercial setting." *Hoglund v. Meeks*, 139 Wn.App. 854, 870-71 (2007). "Whether parties manifested mutual assent to form a contract is generally a factual question." *Id*.

The Court concludes that Plaintiff's common law claims should proceed. Her unjust enrichment and money-had-and-received claims may be based on Fidelity's alleged violation of RCW 48.29.140, but the claims are independent of Plaintiff's CPA claims. In any event, Fidelity has not directed the Court to any language in the CPA or the insurance code that indicates that the Legislature intended the CPA to supplant common law causes of action. This order recognizes that a title insurer does violate RCW 48.29.140 when it deviates from its filed rates. Thus, Plaintiff has stated cognizable common law claims for

unjust enrichment and money-had-and-received by alleging that Fidelity improperly received a benefit to which it was not entitled.[5]

The Court also concludes that Plaintiff's breach of implied contract claim should proceed. In its motion to dismiss, Fidelity argued that this claim fails because (1) the claim is barred by RCW 48.18.190 which prohibits modification of an insurance policy except by writing, (2) Plaintiff failed to plead any meeting of the minds or mutual assent, and (3) there could be no breach of implied contract because the rate charged was not unlawful. Dkt. 22 at 20. The Court here addresses only the first two arguments because this order recognizes that Plaintiff validly alleges a violation of RCW 48.29.140.

Fidelity frames Plaintiff's allegation in support of her breach of implied contract claim as follows: An implied contract between Plaintiff and Fidelity should have modified the agreed price, which was contained in the actual written title insurance contract between Fidelity and Wells Fargo. Fidelity claims that such a claim is barred because an unwritten contract to vary the express terms of a title policy would violate Washington's codified parol evidence rule with respect to insurance policies. *Id.* (citing RCW 48.19.190). In her response, Plaintiff maintains that the implied contract between Fidelity and Plaintiff, whereby Fidelity agrees to charge a lawful rate, is separate from the written contract between Fidelity and Wells Fargo, and thus "Fidelity's appeal to the parol evidence rule . . . is to no avail." Dkt. 36 at 23. The Court agrees with Plaintiff. Plaintiff does not claim that she and Fidelity agreed to modify terms of the contract. Rather, Plaintiff claims that the contract price was unlawful.

---

[5] In its motion to dismiss, Fidelity argued that Plaintiff's common law claims fail because "enforcement authority [under the insurance code] is expressly delegated only to the insurance commissioner" and "[n]owhere does the statute provide for any other remedy, including a private cause of action." Dkt. 22 at 19. While the authority to enforce some provisions of the insurance code and regulations may lie solely with the Insurance Commissioner, here Plaintiff has alleged that she was directly harmed as a result of Fidelity's deviation from its filed rates. In this situation, the Commissioner apparently does not have authority to order a title insurer to pay restitution or damages to a consumer. Thus, a consumer's remedy in Plaintiff's situation is to file a private action. *See* Dkt. 55 at 3 (Insurance Commissioner's amicus brief).

Fidelity next maintains that Plaintiff failed to allege a meeting of the minds or mutual assent between Plaintiff and Fidelity. This argument fails. Plaintiff's breach of implied contract claim satisfies notice-pleading standards. Whether an implied contract actually exists is a factual question.

**E.      Certification to Washington State Supreme Court or for Interlocutory Appeal**

In her motion for reconsideration, Plaintiff alternatively requested the Court to certify for interlocutory appeal the question of whether title insurers are required to follow filed rates. This request is moot.

The Court also concludes that certification to the Washington Supreme Court is not necessary.

### III. ORDER

IT IS HEREBY ORDERED that

Defendant's motion for reconsideration (Dkt. 50) of the Court's denial of Defendant's motion to dismiss Plaintiff's bad faith CPA claim is **DENIED**.

IT IS FURTHER ORDERED that

Plaintiff's motion for reconsideration (Dkt. 48) is **GRANTED in part** and **DENIED in part**, as follows:

1.      Plaintiff's non-per se Consumer Protection Act claim may proceed.

2.      Plaintiff's common law claims for unjust enrichment, money-had-and-received, and breach of implied contract may proceed.

3.      Plaintiff's motion for reconsideration of the Court's dismissal of her per se Consumer Protection Act claim based on a violation of RCW 48.29.140 is denied.

4.      Plaintiff's alternative motion to certify for interlocutory appeal is denied as moot.

Dated this 26th day of February, 2009.

_____
BENJAMIN H. SETTLE
United States District Judge